**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 15-1**

---

WILLIAM CHARLES MORVA,

       Petitioner - Appellant,

    v.

DAVID ZOOK, Warden, Sussex I State Prison,

       Respondent - Appellee.

---

Appeal from the United States District Court for the Western District of Virginia, at Roanoke. Michael F. Urbanski, District Judge. (7:13-cv-00283-MFU-RSB)

---

Argued: March 22, 2016            Decided: May 5, 2016

---

Before WYNN and DIAZ, Circuit Judges, and DAVIS, Senior Circuit Judge.

---

Affirmed by published opinion. Judge Diaz wrote the opinion, in which Judge Wynn and Senior Judge Davis joined.

---

**ARGUED:** Jonathan P. Sheldon, SHELDON, FLOOD & HAYWOOD, PLC, Fairfax, Virginia, for Appellant. Alice Theresa Armstrong, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee. **ON BRIEF:** Teresa L. Norris, BLUME NORRIS & FRANKLIN-BEST, LLC, Columbia, South Carolina, for Appellant. Mark R. Herring, Attorney General of Virginia, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee.

DIAZ, Circuit Judge:

William Charles Morva appeals the district court's dismissal of his petition for a writ of habeas corpus, and challenges several aspects of his capital convictions and death sentence. First, Morva argues that the Virginia circuit court's refusal to appoint a prison-risk-assessment expert compels relief under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d). But because Morva has identified no clearly established federal law requiring the appointment of a nonpsychiatric expert, we reject this claim.

Next, Morva asserts three related ineffective-assistance-of-counsel claims regarding his counsel's investigation and presentation of mitigating evidence in his capital sentencing hearing. Reviewing these claims through the deferential lens of § 2254(d), we find neither deficient performance nor resulting prejudice under Strickland v. Washington, 466 U.S. 668 (1984). Last, we determine whether Morva has shown cause to excuse his procedurally defaulted claim that counsel was ineffective for stipulating at the guilt phase of trial that Morva was a prisoner in lawful custody at the time of the alleged capital murder. Finding the underlying claim insubstantial under Martinez v. Ryan, 132 S. Ct. 1309 (2012), we hold that he has not.

Accordingly, we affirm the district court's judgment.

2

I.

A.

In the summer of 2006, Morva was in jail awaiting trial in Montgomery County, Virginia, on burglary-, robbery-, and firearm-related charges. He had been in jail for approximately one year when he escaped and committed the crimes we address in this appeal. We set out the relevant facts of Morva's crimes, as recited by the Supreme Court of Virginia:

> Morva was scheduled to go to trial on August 23, 2006. In the evening on August 19, 2006, he informed the jail personnel that he required medical attention due to an injury to his leg and forearm. During the early morning hours of August 20, 2006, Sheriff's Deputy Russell Quesenberry, who was in uniform and armed with a Glock .40 caliber semi-automatic pistol, transported Morva to the Montgomery Regional Hospital located in Montgomery County. Morva was wearing waist chains, but Deputy Quesenberry did not secure Morva's allegedly injured arm.
>
> Upon arrival at the hospital, Morva "kept trying" to walk on Deputy Quesenberry's right side even though he was ordered to walk on Deputy Quesenberry's left side. Quesenberry was required to have Morva walk on his left because Quesenberry wore his gun on his right side. Quesenberry observed that Morva's limping was sporadic and "sort of went away." Also, Nurse Melissa Epperly observed Morva walking as if he were not injured.
>
> After the hospital treated Morva, Morva requested to use the bathroom. Deputy Quesenberry inspected the bathroom and allowed Morva access. While in the bathroom, Morva removed a metal toilet paper holder that was screwed to the wall. As Deputy Quesenberry entered the bathroom, Morva attacked him with the metal toilet paper holder, breaking Quesenberry's nose, fracturing his face, and knocking him unconscious. Morva then took Quesenberry's gun.

3

Prior to leaving the bathroom, Morva confirmed that Quesenberry's gun was ready to fire, ejecting a live round from the chamber.

After escaping from the bathroom, Morva encountered Derrick McFarland, an unarmed hospital security guard. Morva pointed Quesenberry's gun at McFarland's face. McFarland stood with his hands out by his side and palms facing Morva. Despite McFarland's apparent surrender, Morva shot McFarland in the face from a distance of two feet and ran out of the hospital, firing five gunshots into the electronic emergency room doors when they would not open. McFarland died from the gunshot to his face.

In the morning of August 21, 2006, Morva was seen in Montgomery County near "Huckleberry Trail," a paved path for walking and bicycling. Corporal Eric Sutphin, who was in uniform and armed, responded to that information by proceeding to "Huckleberry Trail."

Andrew J. Duncan observed Morva and then later observed Corporal Sutphin on "Huckleberry Trail." Four minutes later, Duncan heard two gunshots, less than a second apart. David Carter, who lived nearby, heard shouting, followed by two gunshots, and saw Corporal Sutphin fall to the ground.

Shortly thereafter, Officer Brian Roe discovered Corporal Sutphin, who was dead from a gunshot to the back of his head. Corporal Sutphin's gun was still in its holster with the safety strap engaged. Officer Roe confiscated Corporal Sutphin's gun to secure it and continued to search for Morva.

Later that day, Officer Ryan Hite found Morva lying in a ditch in thick grass. Even though Morva claimed to be unarmed, officers discovered Quesenberry's gun on the ground where Morva had been lying. Morva's DNA was found on the trigger and handle of Quesenberry's gun.

Morva v. Commonwealth (Morva I), 683 S.E.2d 553, 557 (Va. 2009).

After a six-day trial, the jury found Morva guilty of assault and battery of a law-enforcement officer, escape of a prisoner

by force or violence, three counts of capital murder,[1] and two counts of using a firearm in the commission of a murder.

## B.

## 1.

We begin with a brief discussion of Virginia's capital sentencing scheme.

Under Virginia law, a capital sentencing hearing proceeds in two stages. See Tuggle v. Netherland, 516 U.S. 10, 12 n.1 (1995) (per curiam). First, the jury decides whether the Commonwealth has proved at least one of two statutory aggravating factors beyond a reasonable doubt: the defendant's future dangerousness and the vileness of his capital offense conduct. Va. Code Ann. §§ 19.2-264.2, 19.2-264.4(C). In evaluating the aggravating factor of future dangerousness, the jury is limited to considering the defendant's criminal record, his prior history, and the circumstances surrounding the commission of the capital offense. §§ 19.2-264.2, 19.2-264.4(C). If the jury fails to find an aggravating factor, it must impose a sentence of life imprisonment; if, however, the jury finds one or both of the statutory aggravating factors, it has full discretion to impose either the death sentence or life

---

[1] Morva was charged with the capital murder of Derrick McFarland, the capital murder of Eric Sutphin, and the capital offense of premeditated murder of more than one person within a three-year period.

5

imprisonment.  See §§ 19.2-264.2, 19.2-264.4(C)–(D); Tuggle, 516 U.S. at 12 n.1.

Although Virginia juries are not instructed to give special weight to aggravating factors or to balance aggravating and mitigating evidence, Swann v. Commonwealth, 441 S.E.2d 195, 205 (Va. 1994), juries are constitutionally required to consider relevant mitigating evidence in determining a sentence in a capital case, Eddings v. Oklahoma, 455 U.S. 104, 113–14 (1982).

2.

Prior to trial, Morva moved for the appointment of Dr. Mark D. Cunningham, a prison-risk-assessment expert, to "rebut the Commonwealth's claim that Morva was a future danger to society and to provide the jury with an assessment of the likelihood that Morva would commit violence if he were sentenced to life in prison."  Morva I, 683 S.E.2d at 557.  The circuit court denied the motion, stating that Virginia law barred as irrelevant Dr. Cunningham's testimony regarding the environment and structure of a maximum-security facility as well as testimony regarding rates of violence among individuals similarly situated to the defendant.  Morva later moved for reconsideration, supported by a letter from Dr. Cunningham, but the motion was denied.

Morva also sought the appointment of a mental-health expert and a mitigation specialist, which the circuit court granted. The court appointed Dr. Bruce Cohen, a forensic psychiatrist;

6

Dr. Scott Bender, a neuropsychologist; and Dr. Leigh Hagan, a psychologist. All three experts prepared capital-sentencing evaluations. Dr. Cohen and Dr. Bender diagnosed Morva with schizotypal personality disorder.[2] Dr. Cohen and Dr. Hagan, however, noted that there was no evidence indicating that Morva was experiencing "an extreme mental or emotional disturbance" at the time of the capital offenses, or that he was "unable to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law." J.A. 2013; see also J.A. 2025–26 (showing in Dr. Bender's evaluation that he did not find to the contrary; rather, he did not consider the issue).

At the sentencing phase, the Commonwealth tendered evidence of both statutory aggravating factors. Morva called thirteen witnesses, including Dr. Bender and Dr. Cohen. While Dr. Cohen testified to Morva's absence of extreme mental or emotional disturbance and his ability to appreciate the criminality of his conduct, the doctor also testified that Morva's schizotypal personality disorder mitigated against imposing the death sentence. The jury ultimately found both aggravating factors beyond a reasonable doubt and imposed the death sentence on each of the three capital murder convictions.

---

[2] The disorder "shares some of the biologic, emotional, and cognitive features of schizophrenia, but the symptoms are of lesser severity." J.A. 2015.

7

On direct appeal (and as relevant here), Morva challenged the circuit court's denial of his motion to appoint Dr. Cunningham as a prison-risk-assessment expert. The Supreme Court of Virginia found no abuse of discretion, affirmed Morva's convictions and sentences, and subsequently denied rehearing. Two justices dissented from the majority's decision on the prison-risk-assessment issue, finding that the circuit court's denial of Morva's motion "result[ed] in a fundamentally unfair trial in the sentencing phase" because absent Dr. Cunningham's testimony and assessment, Morva "was not permitted the means to effectively respond to the Commonwealth's assertions" of future dangerousness. Morva I, 683 S.E.2d at 568–69 (Koontz, J., dissenting).

The U.S. Supreme Court denied further review.

## C.

Morva then sought post-conviction relief in the Supreme Court of Virginia. His petition raised, in relevant part, three of the ineffective-assistance-of-counsel claims before us now. The Warden filed a motion to dismiss, supported with exhibits and affidavits, including Dr. Bender's, Dr. Cohen's, and Dr. Hagan's capital-sentencing evaluations. Morva moved repeatedly to supplement the record and for discovery, the appointment of mental-health experts, and an evidentiary hearing. The court

8

denied Morva's motions and dismissed the habeas petition, finding no ineffective assistance.

Morva subsequently filed a federal habeas petition under 28 U.S.C. § 2254, raising the claims on appeal here. The district court held two hearings, permitted supplemental briefing, and later issued a memorandum opinion dismissing the petition. The court found that Morva was not entitled to relief under AEDPA's deferential standard. It also held that Morva failed to show cause for his defaulted ineffective-assistance claim.

This appeal followed.

## II.

Morva presents five claims. First, he contends that the Virginia circuit court's denial of his motion to appoint a prison-risk-assessment expert violated his Eighth and Fourteenth Amendment rights. Next, Morva raises three related ineffective-assistance-of-counsel claims regarding counsel's investigation into his childhood, family background, and mental-illness history; counsel's presentation of mitigating evidence; and counsel's assistance to the state-funded mental-health experts. Finally, Morva appeals the denial of relief on a separate ineffective-assistance-of-counsel claim, raised for the first time in the district court, regarding his counsel's decision during the guilt phase of trial to stipulate to Morva's status

9

as a "prisoner in a state or local correctional facility," who was "imprisoned, but not yet had gone to trial," and who was "in lawful custody" at the time of the charged offenses.  J.A. 282–83.

We consider each argument in turn, "reviewing de novo the district court's denial of [Morva's] petition for a writ of habeas corpus."  Gray v. Zook, 806 F.3d 783, 790 (4th Cir. 2015).

A.

We turn first to Morva's prison-risk-assessment claim. Because the Supreme Court of Virginia adjudicated this claim on the merits, we may not grant Morva habeas relief unless the court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Gordon v. Braxton, 780 F.3d 196, 202 (4th Cir. 2015) (quoting § 2254(d)).

Our evaluation of a state's application of clearly established federal Supreme Court precedent depends on the specificity of the clearly established law.  "[W]here the 'precise contours' of [a] right remain 'unclear,' state courts enjoy 'broad discretion' in their adjudication of a prisoner's claims."  Woods v. Donald, 135 S. Ct. 1372, 1377 (2015) (per

10

curiam) (second alteration in original) (quoting White v. Woodall, 134 S. Ct. 1697, 1705 (2014)). Similarly, when the Supreme Court has not yet "confront[ed] 'the specific question presented by [a particular] case,' the state court's decision [cannot] be 'contrary to' any holding" of the Supreme Court. Id. (quoting Lopez v. Smith, 135 S. Ct. 1, 4 (2014) (per curiam)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Thus, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007).

The Supreme Court of Virginia did not unreasonably reject Morva's claim that he was constitutionally entitled to a state-funded prison-risk-assessment expert. Morva improperly frames the court's alleged error as an unconstitutional prohibition on his right to present mitigating evidence. But this presents the issue "at too high a level of generality." Woods, 135 S. Ct. at 1377. Rather, Morva challenges the Supreme Court of Virginia's

11

decision that due process did not require the appointment of a state-funded nonpsychiatric expert—particularly where other state-funded experts had been provided—because he did not make the required showing under Virginia law.

We conclude that the Supreme Court of Virginia reasonably applied clearly established federal law in rejecting Morva's challenge. Notably, the U.S. Supreme Court has never addressed a capital defendant's right to a state-funded nonpsychiatric expert. The Court has only ruled on an indigent defendant's due process right to a state-funded psychiatrist when he makes "a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial." Ake v. Oklahoma, 470 U.S. 68, 74, 79 (1985). Since Ake, "the Supreme Court ha[s] flatly declined to resolve the question of what, if any, showing would entitle an indigent defendant to [state-funded] non-psychiatric assistance as a matter of federal constitutional law." Weeks v. Angelone, 176 F.3d 249, 265–66 (4th Cir. 1999).

Absent federal precedent on the issue, the Supreme Court of Virginia has crafted a rule to determine when due process requires a state-funded nonpsychiatric expert. In Husske v. Commonwealth, the court announced the "particularized need" standard: "an indigent defendant who seeks the appointment of an expert witness, at the Commonwealth's expense, must demonstrate

12

that the subject which necessitates the assistance of the expert is 'likely to be a significant factor in his defense,' and that he will be prejudiced by the lack of expert assistance." 476 S.E.2d 920, 925 (Va. 1996) (citation omitted) (quoting Ake, 470 U.S. at 82–83). To satisfy this burden, the defendant must demonstrate that the "expert would materially assist him in the preparation of his defense" and that the expert's absence "would result in a fundamentally unfair trial." Id.

We have said that the Husske standard is "congruent with the requirements of the federal Constitution." Bramblett v. True, 59 F. App'x 1, 9 (4th Cir. 2003); see also Page v. Lee, 337 F.3d 411, 415–16 (4th Cir. 2003) (finding that North Carolina's particularized-need test, which mirrors Virginia's, "is surely a reasonable interpretation of Ake"). Thus, the Supreme Court of Virginia did not unreasonably apply clearly established federal law in requiring Morva to show a particularized need for his requested expert.

Turning to the Supreme Court of Virginia's application of the Husske test to Morva's case, we find no constitutional violation warranting habeas relief under § 2254(d). The court first addressed the three cases on which Morva relied in support of his claim—Gardner v. Florida, 430 U.S. 349 (1977), Skipper v. South Carolina, 476 U.S. 1 (1986), and Simmons v. South Carolina, 512 U.S. 154 (1994)—and found they did not dictate the

13

result he urged.  Morva I, 683 S.E.2d at 564–66.  The court then discussed Virginia precedent on the relevance of prison-environment evidence to a future-dangerousness assessment and, finding irrelevant and therefore inadmissible an "essential" part of Dr. Cunningham's proffered testimony (i.e., his testimony regarding prison life, prison security, and statistics on similarly situated defendants' instances of violence in prison), concluded that "the circuit court did not err or abuse its discretion in denying [Morva's] motion" because Morva did not satisfy the particularized-need test.  Id. at 565–66.

The Supreme Court of Virginia's conclusion that Gardner, Skipper, and Simmons do not support the constitutional rule Morva asserts is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Gardner concerned a court's imposition of the death penalty on the basis of a confidential presentence report that was never disclosed to the defense.  430 U.S. at 353 (plurality opinion). Vacating and remanding the case for resentencing, the U.S. Supreme Court announced that the imposition of a death sentence "on the basis of information which [the defendant] had no opportunity to deny or explain" is unconstitutional.  Id. at 362 (plurality opinion) (emphasis added) (finding a due process violation); id. at 364 (White, J., concurring in the judgment) (finding an Eighth Amendment violation); id. (Brennan, J.,

14

concurring in part and dissenting in part) (joining the plurality's due process reasoning).

The Court relied on this general principle years later in Skipper, when it considered a capital defendant's right to present mitigating evidence regarding future dangerousness when the prosecution asserts that aggravating factor, lest the defendant be sentenced to death on information he was never allowed to challenge. 476 U.S. at 5 n.1. The Court's holding, however, was narrow:

> [T]he only question before us is whether the exclusion from the sentencing hearing of the testimony petitioner proffered regarding his good behavior during the over seven months he spent in jail awaiting trial deprived [him] of his right to place before the sentencer relevant evidence in mitigation of punishment. It can hardly be disputed that it did.

Id. at 4 (emphasis added).

Finally, Simmons announced yet another narrow expansion of a capital defendant's right to introduce mitigating evidence. The Court there held that when "the defendant's future dangerousness is at issue, and state law prohibits the defendant's release on parole, due process requires that the sentencing jury be informed that the defendant is parole ineligible." Simmons, 512 U.S. at 156 (plurality opinion); id. at 177–78 (O'Connor, J., concurring in the judgment) ("Where the State puts the defendant's future dangerousness in issue, and the only available alternative sentence to death is life

15

imprisonment without possibility of parole, due process entitles the defendant to inform the capital sentencing jury—by either argument or instruction—that he is parole ineligible.").[3]

These cases do not clearly establish a capital defendant's right to a state-funded nonpsychiatric expert. See White, 134 S. Ct. at 1702 ("'[C]learly established Federal law' for purposes of § 2254(d)(1) includes only 'the holdings, as opposed to the dicta, of this Court's decisions.'" (alteration in original) (quoting Howes v. Fields, 132 S. Ct. 1181, 1187 (2012))). Confined as we are under AEDPA, we conclude that the Supreme Court of Virginia's decision regarding a right whose "'precise contours' . . . remain 'unclear,'" is neither contrary to nor an unreasonable application of federal law. Woods, 135 S. Ct. at 1377 (quoting White, 134 S. Ct. at 1705).

The Supreme Court of Virginia's separate determination that Morva failed to show a particularized need for the expert also does not run afoul of clearly established law. The court's classification of prison-environment evidence as irrelevant and therefore inadmissible is not unreasonable under U.S. Supreme Court precedent. Nor is the court's similar determination

---

[3] Together, the three-justice plurality and Justice O'Connor, joined by Chief Justice Rehnquist and Justice Kennedy, "provid[ed] the dispositive votes necessary to sustain [the judgment]." O'Dell v. Netherland, 521 U.S. 151, 158 (1997).

16

regarding statistical evidence of similarly situated inmates and instances of prison violence.

A defendant's constitutional right to present mitigating evidence related to his character, criminal history, and the circumstances of his offense does not upset a state court's broad discretion in determining the admissibility of other, nonindividualized evidence. See Lockett v. Ohio, 438 U.S. 586, 604 & n.12 (1978) (plurality opinion) ("Nothing in this opinion limits the traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense."); see also Johnson v. Texas, 509 U.S. 350, 362 (1993) ("[Lockett and its progeny] do not bar a State from guiding the sentencer's consideration of mitigating evidence. Indeed, we have held that 'there is no . . . constitutional requirement of unfettered sentencing discretion in the jury, and States are free to structure and shape consideration of mitigating evidence . . . .'" (second alteration in original)). Thus, the Supreme Court of Virginia did not unreasonably apply U.S. Supreme Court precedent by deeming irrelevant evidence that did not relate specifically to Morva's character, background, criminal record, or the circumstances of his offense—i.e., evidence regarding general prison life and security offered to show that Morva's "opportunities to commit criminal acts of

17

violence in the future would be severely limited in a maximum security prison." Burns v. Commonwealth, 541 S.E.2d 872, 893 (Va. 2001).

Finally, the Supreme Court of Virginia did not unreasonably decide the facts. Morva contends otherwise, but he does not identify the alleged factual error. We assume he takes issue with the court's finding that the inadmissible evidence of general prison life and security was "essential" to Dr. Cunningham's proffered testimony. Morva I, 683 S.E.2d at 566. But Dr. Cunningham's own statements to the circuit court compel this finding. In his letter, he wrote that an individualized prison-risk assessment "is only meaningful if it takes into account the person's future setting, if known, and the frequency of serious violence by people with similar characteristics in similar settings." J.A. 176. His declaration also noted that the proffered group-statistical data and prison-environment evidence are "necessary" and "critically important" to a "reliable violence risk assessment." J.A. 145–46. Accordingly, we hold that Morva's prison-risk-assessment claim does not warrant federal habeas relief.

B.

Next we consider Morva's nondefaulted ineffective-assistance-of-counsel claims. First we determine the appropriate standard of review. Then we turn to the merits.

18

The district court applied § 2254(d) to Morva's nondefaulted claims, and we review that decision de novo. Gordon, 780 F.3d at 202. For AEDPA's deferential standard to apply to the state post-conviction-relief court's dismissal of these claims, the court's decision must qualify as an "adjudicat[ion] on the merits" under § 2254(d); otherwise, de novo review is proper. Id. (alteration in original) (quoting § 2254(d)). "Whether a claim has been adjudicated on the merits is a case-specific inquiry," Winston v. Pearson (Winston II), 683 F.3d 489, 496 (4th Cir. 2012), but "[a] claim is not 'adjudicated on the merits' when the state court makes its decision 'on a materially incomplete record,'" Gordon, 780 F.3d at 202 (quoting Winston v. Kelly (Winston I), 592 F.3d 535, 555 (4th Cir. 2010)). "A record may be materially incomplete 'when a state court unreasonably refuses to permit "further development of the facts" of a claim.'" Id. (quoting Winston II, 683 F.3d at 496). Morva argues that the state court's denial of the appointment of experts and an evidentiary hearing resulted in a decision on a materially incomplete record. We disagree.

Although the Supreme Court of Virginia precluded some factual development as to counsel's investigative decisionmaking, the court did not act unreasonably. The record

19

was substantial and contained sufficient evidence to answer the Strickland inquiry. Moreover, the record provided reasons for counsel's decisions not to interview or call certain witnesses at the sentencing phase, and included cumulative information about Morva's background that counsel received through witness interviews. And trial transcripts show the extent of mitigating evidence presented to the jury.

Moreover, there is no doubt that the Supreme Court of Virginia considered this substantial record in ruling on Morva's ineffective-assistance claims. See Morva v. Warden of Sussex I State Prison (Morva II), 741 S.E.2d 781, 789–90 (Va. 2013) (discussing the "double-edged" nature of submitted affidavits regarding Morva's background and character, and evaluating the quality and implications of Morva's mental-health evidence).

We therefore review Morva's remaining nondefaulted claims under AEDPA's highly deferential standard. Under AEDPA, we defer to the state court's judgment, and under clearly established Supreme Court precedent, the state court defers to counsel's presumptive "sound trial strategy." Strickland, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential."). It was Morva's burden before the state court to show both that counsel's performance was deficient—that "counsel's representation fell below an objective standard of reasonableness"—and that he suffered prejudice as a result—by

20

showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 688, 694. "The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 112.

"Surmounting Strickland's high bar is never an easy task," id. at 105 (quoting Padilla v. Kentucky, 559 U.S. 356, 371 (2010)), and "[e]stablishing that a state court's application of Strickland was unreasonable [or contrary to clearly established federal law] under § 2254(d) is all the more difficult," id. This double-deference standard effectively cabins our review to a determination of "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

2.

Morva asserts that counsel was ineffective in failing to (1) adequately investigate his background, history, character, and mental illness; (2) provide all available information to the mental-health experts to ensure accurate evaluations; and (3) adequately present the available mitigating evidence to the jury. Although Morva identifies these as three distinct claims, his briefs address them together, and we will resolve them as such. The post-conviction-relief court found that Morva failed to satisfy both Strickland prongs. We first review the court's

decision on deficient performance, before considering whether Morva met his burden as to prejudice.

a.

Regarding deficient performance, the Supreme Court of Virginia held that counsel's investigation and presentation of mitigating evidence did not fall below an objective standard of reasonableness. See Morva II, 741 S.E.2d at 789 (calling counsel's investigation "exhaustive," finding that counsel spoke with the affiants on whom Morva's claim relies, and characterizing the affiants' would-be testimony as "double-edged" (quoting Lewis v. Warden of Fluvanna Corr. Ctr., 645 S.E.2d 492, 505 (Va. 2007))). Similarly, the court found that counsel adequately assisted the mental-health experts. Id. at 790 (finding that Morva failed to show an indication of "true mental illness" to alert counsel).

The Supreme Court of Virginia's decision on deficient performance does not warrant federal habeas relief. As to the investigation, Morva challenges trial counsel's alleged failure to investigate Morva's multigenerational family history by conducting "little or no investigation of [Morva's] immediate family" and only "cursory interviews with [Morva's mothers'] family members." Appellant's Br. at 50, 57. The record shows, however, that counsel hired a mitigation expert and interviewed many of the family-member affiants who did not testify at trial

22

and on whom Morva relies to show ineffective assistance, including Morva's mother, sister, paternal half-sister, one of his brothers, and two of his aunts. Notably, Morva's mother's affidavit provides a thorough account of Morva's father's Hungarian background and American immigration and of her own family history, J.A. 1071–1082, and it also states that she "shared a good deal of information contained in th[e] affidavit with [Morva's capital defense team]" through "several conversations with [them] over a period of more than a year," id. at 1115.

While Morva complains that counsel could have interviewed other family members and spent more time gathering information from those family members that were interviewed, he points to no U.S. Supreme Court case establishing that counsel's effort constitutes deficient performance or that counsel's decision not to pursue this line of mitigating evidence was constitutionally unreasonable. See Strickland, 466 U.S. at 689 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955))).

Indeed, clearly established federal law supports the Supreme Court of Virginia's deference to counsel's performance

23

in this instance. See Wiggins v. Smith, 539 U.S. 510, 533 (2003) ("Strickland does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing."); Strickland, 466 U.S. at 691 (finding that when counsel has "reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable"). Given the doubly deferential standard of AEDPA, we cannot conclude that the Supreme Court of Virginia unreasonably applied Strickland when it held that counsel's investigation into Morva's family history was not "outside the wide range of professionally competent assistance." 466 U.S. at 690.

Regarding the presentation of mitigating evidence, Morva has not shown that counsel performed deficiently. The jury heard from thirteen witnesses, including the mental-health experts who evaluated Morva. Witnesses testified to Morva's absent parents and his tumultuous relationship with them, including that his mother was at times homeless and unable to care for him; Morva's own nomadic lifestyle and homelessness as a young adult; his ongoing health problems; his nonviolent and compassionate nature; and his odd, somewhat fantastical beliefs and behavior.

24

These sympathetic and humanizing facts compose the bulk of the affidavits Morva presented to the Supreme Court of Virginia to show inadequate investigation and presentation of mitigating evidence. That the mitigating evidence Morva insists should have been presented at trial is merely cumulative to the evidence actually heard by the jury further undercuts Morva's claim for deficient performance. See Wong v. Belmontes, 558 U.S. 15, 22–23 (2009) (per curiam) (rejecting the view that counsel should have presented additional "humanizing evidence" about the defendant's "difficult childhood" and "positive attributes," and stating that "[a]dditional evidence on these points would have offered an insignificant benefit, if any at all").

The same can be said about the additional evidence that Morva says counsel should have provided to the mental-health experts. Dr. Bender and Dr. Cohen found that Morva suffered from schizotypal personality disorder. In reaching this diagnosis, they conducted interviews with Morva, his mother, and his sister; performed diagnostic tests and evaluations of Morva; and considered a plethora of documents from counsel, including reports of interviews with Morva's acquaintances. Morva presents no evidence that counsel should have believed these sources were insufficient for the experts to conduct a reliable and accurate mental-health evaluation, or that providing the

25

cumulative evidence that Morva identifies would have materially altered their assessments of his mental condition.

Morva contends that it was objectively unreasonable for counsel to fail to provide the experts certain family medical records and the names of three acquaintances who he claims had "invaluable insight into [his] mental state." Appellant's Br. at 66. But Dr. Bender and Dr. Cohen learned, through their evaluations and interviews, of Morva's maternal family history of schizophrenia. And Morva did not show the Supreme Court of Virginia how his three acquaintances' relationships with him gave them "invaluable insight" into his mental health at the time of the capital offenses, or that counsel should have known of their value to the defense. Thus, the court did not unreasonably apply Strickland or its progeny when it held that Morva failed to substantiate his claim that counsel performed deficiently.

b.

As to prejudice, the Supreme Court of Virginia found that "Morva has not demonstrated what impact, if any," the new family-background evidence "had on his actions," and concluded that the information "does not mitigate Morva's actions." Morva II, 741 S.E.2d at 789. The court also found that Morva failed to show that "the mental health experts who examined Morva in preparation for trial and sentencing would have changed the[ir]

26

expert[] conclusions" if they had received the additional information from counsel. Id. at 790. These decisions are not unreasonable.

On appeal, Morva presents a cumulative prejudice argument. He contends that the "inadequate investigation of [his] multi-generational history deprived [the] jurors of a complex, multifaceted description of [him] as a human being." Appellant's Br. at 69. Additionally, he claims that had counsel given the mental-health experts all known Morva-family history and the contact information of Morva's close acquaintances, "there is a reasonable probability [that] the court-appointed mental health experts would have diagnosed Morva with" a more serious mental illness. Id. at 76. In turn, counsel "could have had an explanation for the jury that Morva's mental illness was a but-for cause of the violence, reducing his moral culpability and providing a strong argument for life in prison rather than a death sentence." Id. at 79.

This claim fails. First, Morva's arguments relate to the jury's finding that his conduct was vile, but it does nothing to combat the future dangerousness aggravating factor. And the jury imposed the death penalty not only on the basis of what Morva had done, but also on the probability that he might commit violent crimes in the future.

27

Second, Morva fails to show a reasonable likelihood that the evidence of his family history and the anecdotal evidence of his mental state—had it been presented—would have resulted in a life sentence. His argument regarding the probability of a different diagnosis is too speculative given the record and the lack of any support from the mental-health experts. See Pooler v. Sec'y, Fla. Dep't of Corr., 702 F.3d 1252, 1268, 1279 (11th Cir. 2012) (finding no § 2254(d) error with the state post-conviction-relief court's determination that the defendant did not show prejudice because he "failed to demonstrate that [the mental-health experts] would have changed their opinions had they conducted more in-depth psychological evaluations or been provided with his records" (quoting Pooler v. State, 980 So. 2d 460, 469 (Fla. 2008) (per curiam))); Roberts v. Dretke, 381 F.3d 491, 500 (5th Cir. 2004) (finding that the prisoner failed to establish Strickland prejudice in part because "there is no evidence in the record suggesting that [the mental-health expert] would change the psychiatric diagnosis in his report based on a review of Roberts's [undisclosed] medical records").[4]

---

[4] Morva unsuccessfully sought to supplement the record with an affidavit and unsworn preliminary report from two clinical psychologists who, years after the capital offenses and Morva's schizotypal-personality-disorder diagnosis, reviewed the documents produced throughout the litigation. The affidavit and report, which the Supreme Court of Virginia declined to consider, push for additional mental-health evaluations to (Continued)

28

Further, the record lacks the alleged "red flags" that would have "'point[ed]' [the experts] to a more serious mental illness." Appellant's Br. at 58 (quoting Rompilla v. Beard, 545 U.S. 374, 392 (2005)). Dr. Cohen thoroughly explained the eight (out of nine) symptoms indicative of schizotypal personality disorder that Morva displayed. Dr. Cohen discussed each symptom individually and also distinguished the personality disorder from an acute disease state with examples of how symptoms manifest in both conditions. Morva's three acquaintances' accounts of his mental state are consistent with Dr. Cohen's account of the schizotypal symptoms Morva manifested after the capital offenses. It is therefore unlikely the experts would have changed their minds on the basis of the acquaintances' anecdotes. And there is no reasonable probability that at least one juror would have changed his sentencing vote on the basis of additional lay-witness testimony regarding Morva's "complex, multifaceted" humanity.

---

determine whether Morva had a more serious mental illness at the time of the capital offenses. Morva also attached to his federal habeas petition a declaration from a psychiatrist, who did not evaluate him directly but reviewed some litigation documents and the trial mental-health experts' evaluations, and opined that Morva suffers from schizophrenic symptoms. However, these submissions do nothing to show that Dr. Cohen, Dr. Bender, and Dr. Hagan would have come to a different medical conclusion at the time of Morva's sentencing—the prejudice question before us now.

Last, when we "reweigh the evidence in aggravation against the totality of available mitigating evidence," it is clear that Morva fails to show prejudice. Wiggins, 539 U.S. at 534. Even the most sympathetic evidence in the record about Morva's troubled childhood and mental health[5] does not outweigh the aggravating evidence presented at trial. "While we have no doubt that the conditions in the home and the treatment of [Morva and his] siblings made for an unpleasant living environment, they do not tip the aggravation-mitigation scale in favor of mitigation." Phillips v. Bradshaw, 607 F.3d 199, 219 (6th Cir. 2010). Because the Supreme Court of Virginia's no-prejudice determination was neither contrary to nor involved an unreasonable application of clearly established law, we reject Morva's ineffective-assistance claims.

## C.

Finally, we turn to Morva's claim of ineffective assistance arising from counsel's stipulation at the guilt phase of trial. To convict Morva of prisoner escape, the jury was required to

---

[5] The affidavit of Constance "Connie" Beth Dye, one of Morva's aunts, relates the most revealing and troubling information about Morva's childhood. Ms. Dye characterizes Morva's father as a moody and controlling "monster" and his mother as absent and mentally troubled. See J.A. 1030–43. She also details the squalor of Morva's early childhood: the house, including the children's room, smelled bad and was littered with trash and food remnants, and the children were malnourished and dirty. See J.A. at 1032–38.

30

find that Morva was, prior to escaping, lawfully imprisoned and not yet tried or sentenced, or lawfully in the custody of law enforcement. See Va. Code Ann. § 18.2-478. Recall that, when he escaped and committed the capital offenses, Morva was in jail awaiting trial on pending charges for, inter alia, armed robbery. After the trial court ruled, in Morva's favor, to prohibit the introduction into evidence of the substance of Morva's pending charges, defense counsel and the Commonwealth stipulated to the following:

> [O]n the dates in question for the crimes charged, that is August 20th and August 21st of 2006, . . . the Defendant was a prisoner in a state or local correctional facility. . . . [T]he Defendant was imprisoned, but not yet had gone to trial on the criminal offenses, and . . . the Defendant was in lawful custody. That is the extent of the stipulation.

J.A. 282–83.

Morva contends that this stipulation improperly admitted an essential element of the capital-murder charge involving the shooting of Derrick McFarland, the hospital security guard. To satisfy its burden as to capital murder, the Commonwealth was required to prove that Morva shot and killed McFarland when he was "confined in" jail or otherwise "in the custody of" a jail employee. See Va. Code Ann. § 18.2-31(3). Morva argues that when he killed McFarland, he had escaped from Deputy Quesenberry's custody and was not physically confined in jail,

31

so the stipulation precluded either a successful motion to strike or an acquittal on that charge.

Morva concedes that the claim, raised for the first time to the district court, is procedurally defaulted. He argues, however, that his state post-conviction counsel's failure to raise the claim in the Supreme Court of Virginia, serves as cause to excuse his procedural default. We do not agree.

A habeas petitioner is generally barred from obtaining federal habeas review of a claim if he failed to exhaust the claim in state court. See Coleman v. Thompson, 501 U.S. 722, 750 (1991). In Martinez, the Supreme Court carved out a "narrow exception" to the Coleman rule. 132 S. Ct. at 1315. Specifically, Martinez held:

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim . . . . where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of Strickland v. Washington. To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

Id. at 1318 (citation omitted). Because state prisoners in Virginia cannot raise ineffective-assistance claims on direct appeal, and because state post-conviction counsel failed to challenge counsel's stipulation, the claim is squarely in

32

Martinez territory. See Fowler v. Joyner, 753 F.3d 446, 462 (4th Cir. 2014), cert. denied, 135 S. Ct. 1530 (2015).

The district court, however, properly found that this was "no[t] [a] substantial claim of ineffective assistance of counsel" and dismissed it for procedural default. Morva v. Davis (Morva III), No. 7:13-cv-00283, 2015 WL 1710603, at *28 (W.D. Va. Apr. 15, 2015).

Even if the stipulation, which mirrors the elements of the prisoner escape offense, conceded an element of the capital-murder charge under section 18.2-31(3), it does not constitute ineffective assistance. It is not objectively unreasonable for counsel to stipulate to a fact that the government can prove. See United States v. Toms, 396 F.3d 427, 433–34 (D.C. Cir. 2005) (finding no deficient performance when counsel stipulated to a fact the government was prepared to show through witness testimony).

The Commonwealth could easily have shown that Morva was a "prisoner confined" despite the fact that he was physically outside of the jail and had escaped law enforcement's custody. In Mu'Min v. Commonwealth, the defendant was charged and convicted of capital murder under section 18.2-31(3)[6] for killing someone after escaping from an off-site prison work detail. See

---

[6] At the time, section 18.2-31(3) was codified as 18.2-31(c). See Mu'Min, 389 S.E.2d at 889.

389 S.E.2d 886, 889–90 (Va. 1990) (describing the facts underlying the conviction), aff'd on other grounds sub nom. Mu'Min v. Virginia, 500 U.S. 415 (1991). On appeal to the Supreme Court of Virginia, the defendant challenged as overly prejudicial the admission into evidence of a copy of his previous conviction, which was offered to prove the "prisoner confined in a state or local correctional facility" element of the capital murder charge. Id. at 894. The court found no reversible error and noted that a jury instruction, which was expressly charged to define the "prisoner confined" element on the basis of the defendant's legal status as an inmate and not on his physical location or whether he escaped, was "a correct statement of the law." Id. at 894 & n.7.

Mu'Min makes clear that the Commonwealth could have shown, through evidence of Morva's pending charges, that he was a "prisoner confined" when he killed McFarland. Cf. Simmons v. Commonwealth, 431 S.E.2d 335, 335–36 (Va. Ct. App. 1993) (explaining that, in the context of escape under Virginia law, the defendant remained a "prisoner in a state, local or community correctional facility" even while released on furlough because the term refers to the prisoner's legal status, which "is not dependent upon actual physical presence in such facility or otherwise restricted by a prisoner's location"). Thus, counsel's strategic choice was not deficient performance.

34

Moreover, the stipulation did not prejudice Morva for substantially the same reason. Jury Instruction No. 9, which was charged without objection, provides that "[a] prisoner of a state or local correctional facility remains a prisoner at all times until he is released from that status by the proper state authority. A prisoner who escapes from custody retains the status of prisoner during the entire course of such an unauthorized absence." J.A. 492. This instruction is almost identical to the one charged in Mu'Min. See 389 S.E.2d at 894 n.7. So even without the stipulation, the Commonwealth could have proven that Morva's killing of McFarland satisfied the elements of capital murder under section 18.2-31(3). As a result, Morva's claim that his counsel was ineffective is not substantial and was properly dismissed for procedural default.

III.

For the foregoing reasons, we affirm the district court's judgment.

AFFIRMED

35