**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-7506**

MARK ANTHONY MILLER,

        Petitioner – Appellant,

    v.

ERIK A. HOOKS, Secretary of the North Carolina Department of Public Safety,

        Respondent – Appellee.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  Thomas D. Schroeder, Chief District Judge.  (1:13-cv-01019-TDS-JLW)

Argued:  May 9, 2018                    Decided:  September 5, 2018

Before GREGORY, Chief Judge, MOTZ, and KEENAN, Circuit Judges.

Reversed and remanded by unpublished opinion.  Chief Judge Gregory wrote the opinion, in which Judge Motz and Judge Keenan joined.

**ARGUED:**  Gabriel Glenn Snyder, Barry Claude Snyder, LAW OFFICES OF BARRY SNYDER, Greensboro, North Carolina, for Appellant.  Clarence Joe DelForge, III, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**  Joshua H. Stein, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF NORTH CAROLINA, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Chief Judge:

Mark Anthony Miller appeals the district court's dismissal of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Miller challenges the district court's decision to grant summary judgment and dismiss his habeas petition as time-barred. For the reasons below, we conclude that Miller timely filed his habeas petition within the applicable one-year statute of limitations. We therefore reverse the district court's judgment and remand the case for further proceedings.

I.

On June 1, 2000, Miller was convicted by a North Carolina jury of two counts of assault with a deadly weapon inflicting serious injury and one count of assault with a deadly weapon. He was sentenced to two consecutive terms of 46-65 months, and to an additional sentence of 150 days.[1] On June 12, 2000, Miller's trial counsel, Kent Lively, filed with the Guilford County Superior Court (the "Superior Court") a notice of appeal on Miller's behalf along with a motion to withdraw as counsel. The motion noted that Miller was indigent and should seek the appointment of the Appellate Public Defender to represent him on appeal. On June 16, 2000, Miller filed a separate *pro se* notice of appeal dated June 7, 2000, and requested the appointment of Mary March Exum, who was then representing him on the appeal of unrelated 1998 felony assault convictions.

---

[1] These offenses, for which Miller was convicted in 2000, occurred in 1996. The sentences imposed for those offenses ran consecutively with additional sentences imposed for 1998 felony assault convictions that are not the subject of this appeal.

3

The Superior Court failed to respond to any of these filings. It did not sign appellate entries or order preparation of the trial transcript, as required by North Carolina's procedural rules. Nor did it act on Lively's motion to withdraw or on either motion to appoint appellate counsel. Lively took no further action in the case.

Over nine years later, on December 21, 2009, Miller filed a *pro se* motion for preparation of the trial transcript. In his motion, he complained that Lively was not handling the appeal, that "[Lively] delibertly [sic] did not appeal this case when I told him to," and that he needed the transcript to "fight [his] case in any way possible." J.A. 262. On January 15, 2010, the Superior Court denied Miller's motion. The court noted that "no appeal entries" had been made in the case and there was no "appellate decision," J.A. 266, then found that the motion did not "describe any basis for providing a transcript of [the] proceedings." *Id.*

Nearly two years later, on September 29, 2011, a staff attorney with North Carolina Prisoner Legal Services, Inc. wrote a Superior Court judge on Miller's behalf to request appellate entries. The attorney argued that Miller was in "legal limbo" because although he had filed a timely notice of appeal, the Superior Court had not issued appellate entries, and thus had prevented the appellate process from moving forward. He asserted that because the Superior Court had yet to take action, the time to prosecute Miller's appeal had not expired and Miller had not lost his right to appeal. In an October 7, 2011 order, the Superior Court agreed that Miller "gave timely notice of appeal

4

pursuant to Rule 4(a)(2)" of the N.C. Rules of Appellate Procedure ("N.C.R. App. P."),[2] and that "appellate entries should be entered at this time so as to permit perfection of the appeal." J.A. 272. The court also ordered preparation of the trial transcript and assigned an assistant appellate defender to represent Miller on appeal.

On October 31, 2011, after learning that the stenographic notes of Miller's trial had been destroyed approximately seven months earlier,[3] the Superior Court ordered the parties to determine whether the trial proceedings could be reconstructed. In an effort to do so, Miller's appellate counsel made several attempts to contact Lively by letter, by telephone, and in person, but he did not respond. Counsel later learned that Lively was seriously ill.[4] The parties compiled as much information and documentation regarding the proceedings as was available and, in January 2012, docketed a record on appeal.

---

[2] N.C.R. App. P. 4(a) provides that "[a]ny party entitled by law to appeal from a judgment or order of a superior or district court rendered in a criminal action may take appeal by:

(1) giving oral notice of appeal at trial, or

(2) filing notice of appeal with the clerk of superior court and serving copies thereof upon all adverse parties within fourteen days after entry of the judgment or order or within fourteen days after a ruling on a motion for appropriate relief made during the fourteen-day period following entry of the judgment or order.

N.C.R. App. P. 4(a)(1)-(2).

[3] Three then current or retired official court reporters provided affidavits stating that the stenographic notes of Miller's trial were destroyed, along with other criminal court reporter notes and audio tapes for the year 2000, on or about March 29, 2011.

[4] Lively passed away shortly thereafter.

In his appeal to the North Carolina Court of Appeals (the "Court of Appeals"), Miller argued that the destruction of the trial transcript deprived him of his rights to effective appellate review, effective assistance of appellate counsel, equal protection, and due process, and that because he could not seek appellate relief without a transcript, he was entitled to a new trial. The State of North Carolina (the "State") moved to dismiss Miller's appeal pursuant to N.C.R. App. P. 25(a) for failure to timely perfect his appeal.[5] The State argued that Miller abandoned his appeal when he failed to timely order the transcript, settle the record, and file an appellate brief in accordance with the requirements of N.C.R. App. P. 4. Miller responded that he gave timely notice of appeal within fourteen days after entry of judgment as required by N.C.R. App. P. 4, and that the State failed to support its N.C.R. App. P. 25 motion with any affidavits or docket entries demonstrating that Miller had not taken timely action to present his appeal for decision. He argued that since the State had failed to identify any deadline he had not met or any appellate rule he had violated, it had not met its burden under N.C.R. App. P. 25. No appeal deadlines were set until the court made appellate entries, appointed counsel, and ordered the transcript. He also argued that the court failed to respond to motions for the appointment of appellate counsel or Lively's motion to withdraw, and that the

---

[5] N.C.R. App. P. 25 states that "[i]f after giving notice of appeal from any court . . . the appellant shall fail within the times allowed by these rules or by order of court to take any action required to present the appeal for decision, the appeal may on motion of any other party be dismissed." It also requires that "[m]otions to dismiss shall be supported by affidavits or certified copies of docket entries which show the failure to take timely action or otherwise perfect the appeal . . . ." N.C.R. App. P. 25(a).

prosecutor's office failed to calendar his pending motions despite receiving notice of them. The Court of Appeals summarily granted the State's motion to dismiss Miller's appeal without opinion on February 29, 2012. Miller then appealed the dismissal of his appeal to the North Carolina Supreme Court ("the Supreme Court"), where the petition was again denied without opinion on August 23, 2012.

In the event that his appeal of his convictions was deemed untimely, Miller filed, contemporaneously with his appeal, a petition for writ of certiorari seeking a belated appeal pursuant to N.C.R. App. P. 21(a)(2).[6] Miller asked the Court of Appeals to review his convictions on the grounds that both Miller and his trial attorney filed timely notices of appeal, and once the Superior Court ordered appellate entries, Miller's newly appointed counsel promptly moved the appeal forward, thus there was no unreasonable delay between the filing of appellate entries and the filing of the petition for certiorari.

The State responded, arguing that Miller abandoned his appeal and that it should be dismissed because his own failure to take action with regard to his convictions for over a decade caused his alleged injury. The State further argued that Miller's delay was unreasonable, that earlier action on his part would have avoided destruction of the transcript, and that he should not now be allowed to benefit from his failure to act. The Court of Appeals summarily denied the petition for certiorari on March 6, 2012, as did the Supreme Court by order dated August 23, 2012.

---

[6] N.C.R. App. P. 21(a) allows a party to file a petition for certiorari seeking review of the Court of Appeals' decision when the party has lost his "right to prosecute an appeal of right or to petition for discretionary review . . . by failure to take timely action . . . ." N.C.R. App. P. 21(a)(2).

7

On November 14, 2013, Miller filed both the instant § 2254 habeas petition with the federal district court and a Motion for Appropriate Relief ("MAR") pursuant to N.C.G.S. 15A-1415 in Superior Court.[7]  The MAR challenged, among other things, his 2000 convictions and sought the same relief alleged in his appeal and petitions for writs of certiorari to the Court of Appeals and Supreme Court.  At the post-conviction evidentiary hearing, Miller, who has an IQ of 82, testified that he had written to Lively following his convictions, his sister had called Lively on his behalf on "numerous occasions," and that Lively had said Miller "was going to get an appeal." J.A. 599, 604. He also testified that between the filing of his notice of appeal and the dismissal of his appeal, he had written to both the Clerk of Court and Lively, but received no response. Miller also testified that he had written to "the courthouse," but received a letter in response stating that he "can't write a judge." J.A. 605-07.

The Superior Court denied the MAR on September 12, 2014, ruling that Miller's ineffective assistance claims were subject to summary dismissal pursuant to N.C.G.S. 15A-1420(b)(1) for failure to adequately set forth facts in support of the claims in an affidavit or other documentary evidence.  The court also found that the dismissal of his appeal by the Court of Appeals, and then the Supreme Court, constituted a ruling on the merits of his claim that his trial counsel was responsible for the failure to perfect his appeal.  Finally, the court ruled the claim was procedurally barred and meritless because

---

[7] The district court stayed Miller's habeas petition while he exhausted his state court remedies.

8

Miller had failed to act to perfect the appeal. The Court of Appeals affirmed the Superior Court's decision without opinion on August 4, 2015.

With Miller's state remedies now exhausted, the State moved for summary judgment on his habeas petition on the grounds that Miller abandoned his appeal, and that it should be summarily dismissed pursuant to N.C.R. App. P. 25(a), and for failure to meet the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1). The State also argued the habeas petition was barred by the equitable doctrine of laches because its ability to answer and defend the habeas action was severely prejudiced due to Miller's unreasonable delay. In response, Miller contended that the judgment on his convictions became final "by the conclusion of direct review" on November 21, 2012, ninety days after the Supreme Court's denial of his direct appeal.

The magistrate judge recommended that the district court grant the motion for summary judgment and dismiss the habeas petition as time-barred. The district court adopted the magistrate judge's recommendation over Miller's objections. It found that Miller failed to perfect his appeal in a timely manner and that this failure "rendered [the appeal] a nullity by mid-2000," made his convictions "final contemporaneously," and resulted in the "loss of the right to appeal." J.A. 1101-02. Because, in the district court's view, Miller had waited more than nine years to investigate the status of his appeal, his habeas petition was "far, far out of time."[8] J.A. 1102. The district court granted the

---

[8] The court also found that Miller's claim that his trial counsel was "constitutionally deficient" for failing to perfect his appeal was both procedurally barred and without merit because the North Carolina courts had already rejected his ineffective (Continued)

9

State's motion for summary judgment, and dismissed the habeas petition as time-barred. Miller appealed, and we granted a certificate of appealability to consider "whether Miller's petition was time-barred." Order, *Miller v. Perry*, No. 16-7506 (4th Cir. May 4, 2017).

## II.

This Court reviews the district court's dismissal of a § 2254 habeas petition *de novo*. *Morva v. Zook*, 821 F.3d 517, 523 (4th Cir. 2016); *Gordon v. Braxton*, 780 F.3d 196, 200 (4th Cir. 2015); *Teleguz v. Pearson*, 689 F.3d 322, 327 (4th Cir. 2012). In this case, we review *de novo* the district court's dismissal, on statute of limitations grounds, of Miller's petition for writ of habeas corpus. *See Miles v. Prunty*, 187 F.3d 1104, 1105 (9th Cir. 1999); *Spikes v. Hickman*, 8 F. App'x 607, 608 (9th Cir. 2001).

Miller contends that he met the one-year statute of limitations to file a habeas petition as set forth in 28 U.S.C. § 2244(d)(1)(A). We agree. "A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of the date on which the judgment became final *by the conclusion of direct review or the expiration of the time for seeking such review*." 28 U.S.C. § 2244(d)(1)(A) (emphasis added). Miller argues that direct review of his June 1, 2000 convictions began with his

assistance claims, Miller had failed to act on his own appeal for several years, and even if counsel had been deficient, Miller had failed to demonstrate prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984).

10

timely filing of a notice of appeal, and that he remained in direct review until the expiration of the 90-day period for seeking review in the U.S. Supreme Court. The North Carolina Supreme Court dismissed his appeal on August 23, 2012. Accordingly, direct review concluded November 21, 2012, and Miller filed his habeas petition within the one-year statute of limitations on November 14, 2013. *See State v. Brown*, 729 S.E.2d 127 (N.C. Ct. App. 2012) (defendant's timely 2005 appeal still pending in 2011 where no transcript and record had been filed and no dismissal order had been entered). The district court declined to adopt this view however, and agreed with the State that under North Carolina law, an appellant who fails to timely perfect his appeal loses his right to appeal by operation of law. *See Woods v. Shelton*, 379 S.E.2d 45, 47 (N.C. Ct. App. 1989); *McGinnis v. McGinnis*, 261 S.E.2d 491, 495 (N.C. Ct. App. 1980); *Coffey v. Savers Life Ins. Co.*, 578 S.E.2d 709 (N.C. Ct. App. 2003) (unpublished). The district court concluded that these civil cases were applicable to the analysis of the timeliness of Miller's criminal appeal because North Carolina's Rules of Appellate Procedure apply equally to both civil and criminal cases unless the rules specifically state otherwise. The district court then concluded that Miller's loss of his right to appeal by operation of law "constituted 'the conclusion of direct review or the expiration of the time for seeking such review' for § 2244's purposes," and thus his habeas petition should be dismissed as untimely. J.A. 1104. We find that under the narrow circumstances of this case, Miller's view is the more reasoned one, as it acknowledges the Superior Court's role in the series of events that led to this most-unlikely scenario now before us.

11

Determining when direct review concludes for AEDPA purposes is a matter of federal law. *See Clay v. United States*, 537 U.S. 522, 531 (2003) ("The words 'by the conclusion of direct review or the expiration of the time for seeking such review' make it clear that finality for the purpose of § 2244(d)(1)(A) is to be determined by reference to a uniform federal rule."). Finality assessments should not "be made by reference to state-law rules that may differ from the general federal rule and vary from State to State." *Id.* at 530-31. At the same time, this federal question "is heavily informed by looking to state law to determine when direct review in state court has ended." *McMonagle v. Meyer*, 802 F.3d 1093, 1097 (9th Cir. 2015). State court filing deadlines are crucial in that regard: a state conviction for a petitioner who does not appeal to the state court of last resort becomes final when the time for seeking further review in state court expires. *See Gonzalez v. Thaler*, 565 U.S. 134, 137 (2012) ("[F]or a state prisoner who does not seek review in a State's highest court, the judgment becomes 'final' on the date that the time for seeking review expires."). Indeed, "we look to state-court filing deadlines when petitioners forgo state-court appeals" to determine finality; referring to state-law procedures in that context "makes sense because such deadlines are inherently court specific. There is no risk of relying on state-law rules that may differ from the general federal rule." *Id.* at 152. But the U.S. Supreme Court has warned against diving deeper into state law to determine when direct review concludes. In *Gonzalez*, the Court rejected the notion that courts should "scour each State's laws and cases to determine how it defines finality for every petitioner who forgoes a state-court appeal. That approach

12

would usher in state-by-state definitions of the conclusion of direct review." *Id.* at 152-53.

Instead, *Gonzalez* adopted a simpler system. If a petitioner appeals all the way to the U.S. Supreme Court, the direct appeal concludes upon the denial of the writ for certiorari. On the other hand, if a petitioner does not exhaust his vertical appeals, direct review concludes upon the expiration of the time for pursuing further appeal in state court or the Supreme Court. Thus in this case, where Miller did not pursue direct review all the way to the U.S. Supreme Court, the judgment became final "at the 'expiration of the time for seeking such review' – when the time for pursuing direct review in [the U.S. Supreme Court], or in state court, expire[d]." *See id.* at 150.

Accordingly, the district court's analysis is flawed for several reasons. First, it adopts, without any supporting legal authority, the State's proposition that based on North Carolina law, direct review may conclude for AEDPA purposes by operation of law. The district court's conclusion that Miller lost his right to an appeal despite having noticed his appeal is difficult to square with the U.S. Supreme Court's decisions in *Clay* and *Gonzalez*, which instruct that we should not subject AEDPA to the vagaries of state law beyond examining state filing deadlines.

Furthermore, *Gonzalez* set forth two possibilities for the conclusion of direct review, neither of which occurred in Miller's case until 2012. The State argues that Miller's direct review concluded in mid-2000. However, the conclusion of his direct review could not have resulted from a denial of a writ by the U.S. Supreme Court, because Miller had not sought such review. Similarly, the appeal could not have

13

concluded based on the expiration of the time for seeking further review in state court or the U.S. Supreme Court after an adverse state decision, because the Superior Court never entered an order dismissing Miller's appeal for failure to perfect, and the North Carolina Supreme Court did not finally dismiss his appeal until 2012.

Moreover, *Woods*, *McGinnis* and *Coffey*, which the State cites in support of its "operation of law" argument, are all distinguishable. First, all three are civil cases that have no application where an indigent defendant's constitutional rights to appellate counsel and appellate review are implicated. While the district court notes correctly that the rules of appellate procedure apply generally to both civil and criminal cases, to say that the rules have equal application in this instance ignores a fundamental difference between such cases. A criminal defendant's Fifth and Sixth Amendment rights to counsel, due process and speedy trial are implicated when an appeal is not prosecuted in a timely manner. The district court did not consider the impact on Miller's constitutional rights when the Superior Court failed to carry out its ministerial duty to prosecute his request for an appeal.

Second, *Woods*, *McGinnis* and *Coffey* did not involve a failure of the Superior Court to carry out its duties to the detriment of the parties. In Miller's case, the Superior Court neglected to rule on three pending motions filed in 2000 by both counsel and Miller, leaving them pending for several years, and did not sign appellate entries or order a transcript, two critical steps that by state law are prerequisites to moving an appeal forward. The Superior Court then compounded its neglect in 2009 when it denied Miller's request for a transcript, even after noting there were no appellate entries in the

14

court's file. Yet, the district court barely mentioned the Superior Court's neglect. It instead blamed Miller, an incarcerated individual who had been assured by his trial counsel he would "get an appeal." The district court concluded that Lively was obligated to represent Miller only until entry of final judgment at the trial stage, *see* N.C.G.S. § 15A-143 (1999), and thus had no obligation under either state law or the rules of professional conduct to represent Miller on appeal. Assuming such a conclusion is correct, the Superior Court's failure to act on the motion for the appointment of appellate counsel was even more significant. The Superior Court's failure left Miller, who was indigent, without counsel from 2000 to 2011, which contributed directly to the delay in prosecution of the appeal that this Court must now address. Because the State has not established that direct review may end, for AEDPA purposes, by operation of law, we find that direct review of Miller's convictions did not conclude until the entry of the North Carolina Supreme Court's dismissal order in 2012.[9]

## III.

The State contends that Miller's habeas petition is also time-barred by the equitable doctrine of laches because Miller's lack of diligence in pursuing his appeal prejudiced the State. We disagree.

---

[9] Because the one-year limitations period had not expired at the time of Miller's filing of his habeas petition, this Court need not address Miller's argument regarding the applicability of the doctrine of equitable tolling.

Laches requires proof of (1) lack of diligence by the party against whom the defense is asserted; and (2) prejudice to the party asserting the defense. *Costello v. United States*, 365 U.S. 265, 282 (1961); *White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990), *cert. denied*, 501 U.S. 1260 (1991). "[W]hether laches bars an action depends upon the circumstances of the case." *White*, 909 F.2d at 101. As an equitable defense, the application of laches is a matter of discretion, not of right. *Emery v. Smith*, 603 S.E.2d 598, 605 (S.C. 2004).

We find that the State is precluded from asserting the defense of laches here. "He who comes into equity must come with clean hands. It is far more than a mere banality. It is a self-imposed ordinance that closes the door of the court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co*., 324 U.S. 806, 814 (1945). It is undisputed that during the period of delay, Miller's trial attorney died and the court reporter destroyed the stenographic notes of the trial. The State asserts that Miller's delay severely damaged its ability to answer and defend the habeas petition, particularly as it relates to Miller's ineffective assistance of counsel claim. At the same time, the State does not acknowledge any obligation it has to the defendant as a result of the Superior Court's failure to act. Moreover, none of the cases the State cites in support of its laches defense are cases where, as here, the delay complained of was, at least in part, due to a court's failure to carry out its duties under state law to move a defendant's appeal forward, or due to a court's failure to act on pending motions.

16

Moreover, the U.S. Supreme Court in *Coleman v. Thompson*, 501 U.S. 722, 754 (1991), has held that the state shoulders the blame for failing to fulfill its constitutional obligation to provide indigents the effective assistance of counsel on appeal. "Where a petitioner defaults a claim as a result of the denial of the right to effective assistance of counsel, the State, which is responsible for the denial as a constitutional matter, must bear the cost of any resulting default and the harm to state interests that federal habeas review entails." *Id.* Holding Miller solely accountable for the failure of appellate review when the Superior Court did not act on his motion for the appointment of appellate counsel is contrary to *Coleman*'s express language. *See also State v. Berryman*, 624 S.E.2d 350, 353 (N.C. 2006) (North Carolina Supreme Court recognized that "[s]tate courts are no less obligated to protect and no less capable of protecting a defendant's federal constitutional rights than are federal courts.").

## IV.

For these reasons, we reverse the district court's dismissal of Miller's petition and we remand for further proceedings.

*REVERSED AND REMANDED*