# RICHARD JAMES MABE

v.

# COMMONWEALTH OF VIRGINIA

No. 0245-91-3

Decided May 12, 1992

COUNSEL

R. Wayne Austin (Johnson, Scyphers & Austin, on brief), for appellant.

Thomas C. Daniel, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

WILLIS, J.—Richard James Mabe, the appellant, was convicted of escaping from the Washington County Jail in violation of Code § 53.1-203(1) and was sentenced to two years imprisonment. He contends that the trial court erred in finding him guilty under Code § 53.1-203(1). He argues that he could be found guilty of no more than a Class 2 misdemeanor under Code § 53.1-131. We find no error and affirm the decision of the trial court.

On August 30, 1990, Mabe was incarcerated in the Washington County Jail on a felony conviction. He was on trustee status, and on August 30, he was assigned to work outside the jail at the Senior Citizens' Center. After working there for four or five hours under the supervision of Charles Trent, an employee of the center, he disappeared. He was captured two days later.

Mabe contends that he was improperly convicted under Code § 53.1-203, which reads, in pertinent part:

It shall be unlawful for a prisoner in a state, local or community correctional facility or in the custody of an employee thereof to:

1. Escape from a correctional facility or from any person in charge of such prisoner.

In contending that Code § 53.1-203 does not apply, Mabe raises two arguments. First, he argues that, because he was not in the custody of a corrections facility employee at the time of his escape, the Commonwealth was required to prove that he was a prisoner "in" a state, local, or community correctional facility. He argues that the statute requires that the escapee be physically "in" the facility at the time of escape. We disagree. Unquestionably, Mr. Trent was not a correctional facility employee, and

Mabe was not in the custody of a correctional facility employee at the time of his escape. However, Mabe misconstrues the meaning of "in" as used in the preliminary paragraph of Code § 53.1-203.

■ The term "prisoner in a . . . correctional facility" refers to the status of the escapee, not to the circumstances of escape. The enumerated subsections of Code § 53.1-203 then set forth various defined offenses that may be committed by persons occupying that status. At the time of his escape, Mabe was a jail prisoner, serving a sentence. His trustee status was awarded by the Sheriff. He was put to work at the Senior Citizens' Center by the Sheriff, and while there remained the Sheriff's prisoner. It was as though he had been given a task within the physical confines of the jail. He was, in every sense, a "prisoner in a . . . correctional facility." *See Wood v. Cox*, 333 F. Supp. 1064, 1065 (W.D. Va. 1971).

■ Second, Mabe argues that to convict him under Code § 53.1-203(1), the Commonwealth was required to prove that he was in the custody of an employee of the correctional facility at the time of his escape. This argument ignores the second part of subsection (1) which states, "or from *any person* in charge of such prisoner." (emphasis added). Mr. Trent was in charge of Mabe when Mabe escaped.

Finally, Mabe argues that he should have been convicted of no greater offense than a Class 2 misdemeanor, because of the pre-emptive effect of Code § 53.1-131(A), which deals with work release. After describing the authority for and structure of work release programs, that statute provides in pertinent part:

All persons accepted in accordance with this section shall be governed by all regulations applying to local work release, notwithstanding the provisions of any other section of the Code.

\* \* \*

Any offender assigned to such a program by the court or sheriff or the administrator of a local or regional jail who, without proper authority or just cause, leaves the area to which he has been assigned to work or attend educational or other rehabilitative programs, or leaves the vehicle or route of travel involved in his going to or returning from such place, shall be guilty of a Class 2 misdemeanor.

Work release is a specific program, designed for rehabilitative purposes, available on court approval to prisoners with special qualifications. Generally described, the program permits the release of a qualified prisoner to work at his regular job as though free, to return to the correctional facility at the conclusion of each work period. The prisoner earns his regular pay, from which he is assessed for his maintenance at the correctional facility. Mabe was not on work release, and he does not contend that he was.

Acknowledging that he was not on work release, Mabe nonetheless argues that by working at the Senior Citizens' Center, he was participating in an educational or other rehabilitative program that Code § 53.1-131 permits to be authorized by the sheriff. He correctly argues that escape from such a program would be an offense under Code § 53.1-131(A), a Class 2 misdemeanor. His argument, however, fails to give full reading to the statute authorizing those programs. The applicable provision, found in the second paragraph of the statute, reads:

> The sheriff or the administrator of a local or regional jail may *further* authorize the offender to participate in educational or other rehabilitative programs as defined in this section *designed to supplement his work release employment* (emphasis added).

The programs to which Mabe refers are dependent upon predicate work release authorization. Since Mabe was not on work release, his employment at the Senior Citizens' Center cannot be considered an educational or rehabilitative program under Code § 53.1-131.

The judgment of the trial court is affirmed.

*Affirmed.*

Baker, J., concurred.

Coleman, J., dissenting.

I respectfully disagree with the construction which my colleagues give to Code § 53.1-203(1). Code § 53.1-203, being a penal statute, "must be strictly construed against the state and limited in application to cases falling clearly within the language of the statute." *Bray v. Commonwealth*, 9 Va. App. 417, 421, 388

S.E.2d 837, 839 (1990). The majority not only fails to adhere to that precept of statutory construction, it does, in my view, disregard the plain and clear wording of the statute. The operative portion of the statute under which Mabe was convicted reads:

It shall be unlawful for a prisoner in a state, local or community correctional facility or in the custody of an employee thereof to:

1. Escape from a correctional facility or from any person in charge of such prisoner.

Code § 53.1-203. I believe that the statute clearly applies only to inmates who escape from the actual confines of a correctional facility or from the custody of an employee thereof. The statute pertains to an escape *"from* a correctional facility" or an escape *"from* any person in charge of such prisoner," who under the statute would be an employee of the state, local, or community correctional facility. Code § 53.1-203(1) does not apply to Mabe's situation because at the time he "disappeared," he was not a "prisoner in a . . . correctional facility," and he did not "[e]scape from a correctional facility or from [a] person in charge of such prisoner."

The statute includes a further requirement that the prisoner must, in fact, be a prisoner "in" a correctional institution at the time of the escape or in the physical charge of an employee of one of the institutions at the time of the escape. The majority construes the meaning of the word "in" as it pertains to correctional facilities merely to identify those prisoners who have been sentenced or committed to certain correctional institutions, rather than defining the circumstances of the escape. Words in a statute are to be accorded their usual, commonly understood meaning. *Bray*, 9 Va. App. at 421, 388 S.E.2d at 839.

The majority, I believe, adopts a strained construction. More significantly, the majority finds that by leaving or failing to return to the correctional facility, Mabe escaped from "any person in charge" of such prisoner. Under the statute, *"any* person in charge of such prisoner" clearly refers to the previous paragraph which defines one prong of escape as being from "the custody of an employee [of a correctional facility]." Mr. Trent was not an employee of a correctional institution; he supervised Mabe's work

at the senior citizens' center. Furthermore, Mabe was not in Trent's custody or charge. Trent exercised no legal control over Mabe from which Mabe could escape.

Another reason which the majority advances for its decision is that Code § 53.1-131, which in general provides that an inmate who fails to return from work release shall be guilty of a Class 2 misdemeanor, does not apply to Mabe's situation because, among other reasons, Mabe had not been released under a qualifying work release program by being permitted to perform community service at the Washington County Senior Citizens' Center. " 'Work release' means full time employment or participation in suitable vocational training programs." Code § 53.1-131(B). Without conceding that work at the senior citizens' center did not satisfy the qualification provision for Mabe to be released under Code § 53.1-131, if the sheriff of Washington County in disregard of the statutory requirements nevertheless released Mabe under Code § 53.1-131, Mabe's failure to return would still be in violation of the penal provisions of that statute. Regardless of whether Code § 53.1-131 applied, Mabe did not violate Code § 53.1-203(1) because at the time he "disappeared," he was not an inmate in a correctional facility and he did not escape *from* a correctional facility or an employee thereof who was in charge of him.

I would reverse the conviction.