GREGORY EUGENE SIMMONS

v.

COMMONWEALTH OF VIRGINIA

No. 0107-92-3

Decided June 22, 1993

COUNSEL

William P. Walker, Office of the Public Defender of the City of Lynchburg, for appellant.

Kathleen B. Martin, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BRAY, J.**—Gregory Eugene Simmons (defendant) was convicted of escape from a correctional facility in violation of Code § 53.1-203(1) and sentenced to imprisonment for one year. He contends on appeal that the Commonwealth failed to prove all requisite elements of the offense. We agree and reverse the conviction.

Under familiar principles of appellate review, we examine the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. *Martin v. Commonwealth*, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will be disturbed only if plainly wrong or without evidence to support it. *Id.*

The record discloses that defendant was incarcerated in the Lynchburg City Jail, after being "sentenced to confinement in the penitentiary of the Commonwealth" for two successive one year terms on convictions unrelated to this appeal. On July 19, 1991, the trial court, acting on defendant's motion, ordered "that the Sheriff . . . shall allow the defendant . . . [to] be released . . . from jail" from 3:00 p.m. until 6:00 p.m. that same day "for the purpose of attending [a]

funeral." The order made no mention of supervision during this furlough,[1] but, before release, defendant was advised by the Chief Jailer that he "would be subject to be charged with escape" if he did not comply with the terms of the order.

When defendant failed to return as scheduled, correction officials "secured" a "warrant for escape," and he was subsequently apprehended and indicted for violating Code § 53.1-203, which provides, in pertinent part:

It shall be unlawful for a prisoner in a state, local or community correctional facility or in the custody of an employee thereof to:

1. Escape from a correctional facility or from any person in charge of such prisoner.

█ Because defendant was not released "in the custody of an employee" of a "correctional facility," we must first determine whether he, nevertheless, remained "a prisoner in a . . . correctional facility" while on furlough. We have previously held that the "term 'prisoner in a . . . correctional facility' refers to the status of the escapee, not to the circumstances of escape." *Mabe v. Commonwealth*, 14 Va. App. 439, 441, 417 S.E.2d 899, 900 (1992); *see also Ruffin v. Commonwealth*, 62 Va. (21 Gratt.) 790, 798 (1871). This status is not dependent upon actual physical presence in such facility or otherwise restricted by a prisoner's location. *Mabe*, 14 Va. App. at 440, 417 S.E.2d at 900. Thus, although defendant had been granted a three hour furlough,[2] he remained "in every sense, a 'prisoner in a . . . correctional facility.' " *Id.* at 441, 417 S.E.2d at 900.

However, defendant's status alone does not support a conviction under Code § 53.1-203(1). The Commonwealth must also prove that he either "[e]scape[d] from a correctional facility or from any person in charge of [him]." *Id.* Without question, defendant did not escape "from any person in charge of [him]." Unlike the accused in *Mabe*,

---

[1] Both counsel use this term to refer to the release and we adopt it here in the interests of clarity and continuity.

[2] Code § 19.2-303 permits a trial judge to retain jurisdiction to modify a sentence beyond the twenty-one day limit of Rule 1:1 if the person sentenced for a felony has not yet been transferred to the Department of Corrections. *D'Alessandro v. Commonwealth*, 15 Va. App. 163, 168, 423 S.E.2d 199, 202 (1992); *Russnak v. Commonwealth*, 10 Va. App. 317, 324, 392 S.E.2d 491, 495 (1990).

who was placed "under the supervision of . . . an employee" at a "Senior Citizen's Center," defendant here was free on an unsupervised furlough. 14 Va. App. at 440-41, 417 S.E.2d at 900. Nothing in this record suggests that he was released into the custody or supervision of "any person" to be "in charge of" him.

■ We must, therefore, decide whether defendant's failure to return to jail in accordance with the terms of the order constituted an "[e]scape *from* a correctional facility" in violation of the statute. Code § 53.1-203(1) (emphasis added). In resolving this question, we are guided by the fundamental principle of statutory construction that penal statutes " 'must be strictly construed against the state and limited in application to cases falling clearly within the language of the statute.' " *Davis v. Commonwealth*, 12 Va. App. 246, 248, 402 S.E.2d 711, 712 (1991) (quoting *Crews v. Commonwealth*, 3 Va. App. 531, 536, 352 S.E.2d 1, 3 (1987)); *Commonwealth v. Knott*, 11 Va. App. 44, 47, 396 S.E.2d 148, 150 (1990). When the "words of [a] statute are clear and unambiguous, judicial construction is not required" and we "must . . . give them their plain meaning." *Diggs v. Commonwealth*, 6 Va. App. 300, 302, 369 S.E.2d 199, 200 (1988).

■ Guided by these precepts, we find that the language "[e]scape from a correctional facility" does not embrace the failure of a prisoner to return from an authorized absence such as the one now before the Court. "From" is a "function word to indicate a starting point: as (1) a place where a physical movement begins." *Webster's Ninth New Collegiate Dictionary* 494 (1989). Thus, to escape *"from"* a correctional facility, the prisoner must first be physically present within such facility. If the legislature had intended otherwise, the disjunctive phrase "or from any person in charge of such prisoner" would have been unnecessary to the statute.

Therefore, because defendant had been released without supervision and was no longer physically present in the facility, we find that he did not escape in violation of Code § 53.1-203(1).[3]

---

[3]  We do not decide, however, whether defendant's conduct constituted an escape in violation of Code § 18.2-479(B).

Accordingly, the decision of the trial court is reversed.

*Reversed and final judgment.*

Coleman, J., and Koontz, J.,* concurred.

---

\* When the case was argued, Judge Koontz presided. Judge Moon was elected Chief Judge effective May 1, 1993.