COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present:   Judges Ortiz, Friedman and White
Argued at Christiansburg, Virginia


GREGORY ALLEN MARLOWE

v.          Record No. 0789-23-3

SOUTHWEST VIRGINIA REGIONAL
 JAIL AUTHORITY, ET AL.

OPINION BY
JUDGE FRANK K. FRIEDMAN
JULY 30, 2024

FROM THE CIRCUIT COURT OF WISE COUNTY
John C. Kilgore, Judge

Richard D. Kennedy (Kennedy Law Office, on briefs), for appellant.

Lori J. Bentley (John D. Eure; Johnson, Ayers & Matthews, on
brief), for appellees.


This appeal involves the attempt of a prisoner, Gregory Marlowe, to recover for injuries

he suffered while being transported to the Southwest Virginia Regional Jail in a van operated by

Tiffany Castle, a regional jail employee.  The circuit court dismissed Marlowe's claims finding

that Castle was entitled to sovereign immunity for simple negligence and that "the allegations in

the complaint, when taken as true, are insufficient as a matter of law to state a claim for gross

negligence."  The circuit court also denied Castle's plea asserting that Marlowe's claims were

barred by the one-year statute of limitations under Code § 8.01-243.2.

Marlowe appeals the circuit court's ruling that his allegations failed to state a claim for

gross negligence.  Castle raised cross-error to the circuit court's decision denying Castle's statute

of limitations plea.

BACKGROUND[1,2]

*Marlowe is injured while being transported in a van driven by Castle.*

According to the second amended complaint, Marlowe was arrested on May 10, 2019, for misdemeanor charges and taken to the Wise County Justice Center for processing. After Marlowe was processed, Castle transported Marlowe in a van to the Regional Jail in Duffield, Virginia. The van used to transport Marlowe is owned by the Southwest Virginia Regional Jail Authority.

During the ride, "Marlowe was shackled by handcuffs from hands to feet" but Castle failed to secure or restrain Marlowe to his "seat, bars or any other portion of the van to prevent falling." During the ride, Castle applied the brakes, causing Marlowe to be "thrown forward" onto the floor. Castle "radioed back to Marlowe" to ask if he was okay. Marlowe told Castle that he was hurt and that she needed to stop the van. Castle continued to drive knowing Marlowe was not secured to his seat; she then applied the brakes again, harder, "forcibly catapult[ing] Marlowe" into the air and against the wall of the van, "knocking him unconscious, injuring one of his hands, and causing him to have ear bleeding, vision impairment[,] and vomiting[.]"

---

[1] No transcript or written statement of facts in lieu of a transcript was filed for either hearing in this case. A transcript or written statement of facts is not "necessary to permit resolution" of the issues on appeal, however, because this Court reviews circuit court decisions sustaining demurrers de novo. *See* Rule 5A:8(b)(4)(ii); *see also Theologis v. Weiler*, 76 Va. App. 596, 603 (2023). Similarly, "[w]here no evidence is taken in support of a plea in bar, the trial court, and the appellate court upon review, consider solely the pleadings in resolving the issue presented." *Commonwealth v. Muwahhid*, 77 Va. App. 821, 828 (2023) (quoting *Gray v. Va. Sec'y of Transp.*, 276 Va. 93, 97 (2008)).

[2] When reviewing a circuit court's decision sustaining a demurrer, we "accept as true all factual allegations expressly pleaded in the complaint and interpret those allegations in the light most favorable to the plaintiff." *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018). "Furthermore, we draw any reasonable inferences arising from the express factual allegations of the complaint in the plaintiff's favor." *Taylor v. Aids-Hilfe Koln e.V.*, 301 Va. 352, 357 (2022).

*The circuit court dismisses the second amended complaint.*

Marlowe filed a complaint on June 9, 2020, alleging negligence against the jail authority, Steve Clear (the superintendent of the jail authority), and "Jane Doe (Transportation Van Driver on May 10, 2019)." Clear and the jail authority demurred to the complaint and filed pleas in bar asserting sovereign immunity and that the action was barred by the applicable statute of limitations. The circuit court sustained Clear's demurrer and dismissed the claim against him with prejudice.

With the circuit court's permission, Marlowe filed a timely amended complaint substituting Castle for Jane Doe as a party defendant. The jail authority again filed a plea in bar asserting sovereign immunity. Castle also filed pleas in bar asserting sovereign immunity and that the action was barred by the applicable statute of limitations, which Castle argued was Code § 8.01-243.2. Code § 8.01-243.2 sets a one-year statute of limitations for claims brought by persons "confined in a state or local correctional facility . . . relating to the conditions of his confinement." Castle argued that because Marlowe's injury occurred on May 10, 2019, his May 13, 2021 amended complaint against Castle was not timely filed under Code § 8.01-243.2.[3]

As for the statute of limitations, Marlowe did not dispute that he had filed his claim against Castle more than a year after it accrued. He argued, rather, that Code § 8.01-243.2 did not apply because he was in a van when the injury occurred, and a van is not a "correctional facility." Marlowe asserted that Code § 53.1-31.1 is "the most applicable code section for this

---

[3] Even though Marlowe filed the amended complaint more than two years after the injury occurred, it would nonetheless be timely under the ordinary two-year statute of limitations for personal injury, because "pursuant to the COVID-19 judicial emergency orders, all case-related deadlines were suspended for 126 days between March 16, 2020, to July 19, 2020." *Clutteur v. Rosier*, 79 Va. App. 55, 76 (2023) (citing *English v. Quinn*, 76 Va. App. 80, 92 (2022) (holding that "[t]he Supreme Court's emergency orders [relating to the COVID pandemic] tolled all statutes of limitations from March 16, 2020, through July 19, 2020")). Thus, the May 10, 2021 deadline for Marlowe's two-year claim was extended into September 2021.

cause of action."[4]  Marlowe argued that Code § 53.1-31.1 created a standard of care for a prison authority overseeing transportation of an individual in custody, the violation of which would give rise to an action for negligence.  Accordingly, Marlowe argued, that a two-year statute of limitations would apply.  *See* Code § 8.01-243.

The circuit court held a hearing on December 1, 2022, and entered an order sustaining the pleas of sovereign immunity and denied Castle's plea of the statute of limitations, granting Marlowe "leave to file a second amended complaint to attempt to assert a claim of gross negligence."  Marlowe filed a second amended complaint, naming only Castle as the defendant, and asserting a claim against her for gross negligence.  Castle demurred.

After a February 15, 2023 hearing, the circuit court entered a final order sustaining Castle's demurrer to the second amended complaint.  The circuit court concluded that "the allegations in the complaint, when taken as true, are insufficient as a matter of law to state a claim for gross negligence."  Marlowe appealed, assigning error to the circuit court's ruling that the allegations were insufficient to rise to gross negligence.  Castle raised cross-error, assigning error to the circuit court's decision denying her plea in bar asserting that Marlowe's claim was barred by the statute of limitations under Code § 8.01-243.2.

## ANALYSIS

A.  *The Negligence Issues Underpinning the Appeal*

This case involves the actions of a government employee which resulted in serious injuries to Marlowe.  Marlowe challenges the court's finding that his pleadings insufficiently alleged gross

---

[4] Code § 53.1-31.1 grants authority to appropriate officials for the transportation of prisoners between state correctional facilities, and allows for interstate transportation of prisoners, as needed.  Code § 53.1-70.1 provides similar authority for transporting prisoners between local correctional facilities.  Marlowe did not revive claims against the jail authority in his second amended complaint and acknowledges that Castle is the only remaining defendant on appeal.

negligence which, if proved, would overcome Castle's claim of sovereign immunity. Marlowe concedes that the application of sovereign immunity to Castle was appropriate as to claims of simple negligence. "A state [or local government] employee who acts wantonly, or in a culpable or grossly negligent manner, is not protected[,]" and is liable for acts of gross negligence. *James v. Jane*, 221 Va. 43, 53-54 (1980). "Gross negligence is 'a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person.'" *Elliott v. Carter*, 292 Va. 618, 622 (2016) (quoting *Cowan v. Hospice Support Care, Inc.*, 268 Va. 482, 487 (2004)).

"We exercise de novo review of the circuit court's decision sustaining the defendants' demurrers." *Theologis v. Weiler*, 76 Va. App. 596, 603 (2023) (citing *Givago Growth, LLC v. iTech AG, LLC*, 300 Va. 260, 264 (2021)). "The purpose of a demurrer is to determine whether a complaint states a cause of action upon which the requested relief may be granted." *Assurance Data, Inc. v. Malyevac*, 286 Va. 137, 143 (2013) (citing *Dunn, McCormack & MacPherson v. Connolly*, 281 Va. 553, 557 (2011)). "A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof." *Id.* Demurrers to gross negligence claims should be sustained where the alleged facts establish that the defendant exercised some degree of care. *See Patterson v. City of Danville*, 301 Va. 181, 198 (2022) ("[A] claim for gross negligence must fail as a matter of law when the evidence shows that the defendants exercised some degree of care." (quoting *Elliott*, 292 Va. at 622)).

Marlowe argues that Castle failed to exhibit even slight diligence if the allegations of the second amended complaint are taken as true—as they must be at this stage of the proceedings. Per the second amended complaint, Castle did not secure Marlowe to his seat, leaving him shackled "hands to feet" with no protection from being tossed in the van. After an initial use of the brakes sent Marlowe flying, Castle was aware of Marlowe's predicament. Yet Castle took no action to

prevent a reoccurrence. She left Marlowe unsecured to his seat and continued to drive. While she did ask if he was okay, she took no action whatsoever regarding his response that he was hurt and that she needed to stop the van. Instead, she continued driving and braked "harder" knowing Marlowe was still unsecured to the seat and vulnerable to being thrown. We will assume, without deciding, that Marlowe sufficiently pleaded a claim of gross negligence.[5] Accordingly, this appeal boils down to whether the one-year statute of limitations established under Code § 8.01-243.2 governs Marlowe's allegations of gross negligence.

B. *Marlowe's claims were barred by the statute of limitations under Code § 8.01-243.2.*

In an assignment of cross-error, Castle argues that the circuit court erred when it denied her plea asserting Marlowe's claims were barred under the applicable statute of limitations, which she contends was one year according to Code § 8.01-243.2. We agree and set aside the trial court's denial of Castle's plea.

1. *Standard of Review*

"A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019) (quoting *Hawthorne v. VanMarter*, 279 Va. 566, 577 (2010)). "Two possible standards of review apply, depending on whether the plea's proponent elects to meet [their] burden by presenting evidence or relying on the pleadings." *Id.* "In the latter situation, 'where no evidence is taken in support of a plea in bar, the trial court, and the appellate court upon review, consider solely the pleadings in resolving the issue presented. In doing so, the facts stated in the plaintiff's [complaint] are deemed true.'" *Id.* (alteration in original) (quoting *Lostrangio v. Laingford*, 261 Va. 495, 497

---

[5] "The doctrine of judicial restraint dictates that we decide cases on the best and narrowest grounds available." *Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) (citations omitted).

(2001)).  Here, "[t]he [circuit] court's ruling regarding [the] statute of limitations . . . [is] based upon the pleadings and presents a pure question of law to be reviewed de novo by this Court." *Ogunde v. Commonwealth*, 271 Va. 639, 644 (2006).

The principles of statutory review guide the analysis here.  Issues of statutory interpretation are pure questions of law, reviewed de novo.  *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007).  Furthermore, "[w]hen the language of a statute is unambiguous, we are bound by the plain meaning of that language."  *Id.*  We must also "give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity."  *Id.*

### 2.  *Application of Code § 8.01-243.2*

Castle relies on Code § 8.01-243.2 for the proposition that Marlowe's claim is governed by a one-year statute of limitations.  Code § 8.01 243.2 states:

> No person confined in a state or local correctional facility shall bring or have brought on his behalf any personal action relating to the conditions of his confinement until all available administrative remedies are exhausted.  Such action shall be brought by or on behalf of such person within one year after cause of action accrues or within six months after all administrative remedies are exhausted, whichever occurs later.

The Supreme Court of Virginia has held that: "For the one-year statute of limitations to apply, [the inmate] must have: (1) been a 'person confined in a state or local correctional facility'; and (2) 'brought on his behalf [a] personal action relating to the conditions of his confinement.'"  *Bing v. Haywood*, 283 Va. 381, 387 (2012) (quoting Code § 8.01-243.2).  Further, that person must be confined in a state or local correctional facility at the time the cause of action accrues.  *See Lucas v. Woody*, 287 Va. 354, 360-61 (2014).  The Court in *Bing* noted

that "confine is defined as 'the state of being imprisoned or restrained.'" *Bing*, 283 Va. at 387 (quoting *Black's Law Dictionary* 318 (9th ed. 2009)).[6]

Castle argues that Marlowe was a "person confined" and that his transportation presented a "condition of [his] confinement." Marlowe counters by arguing a van is simply not a correctional facility. The circuit court agreed with Marlowe and denied Castle's plea.

Marlowe suggests that for the rigors of Code § 8.01-243.2 to apply, he essentially must be confined inside the walls of a correctional facility. Case law has placed emphasis on statutory definitions in this analysis. A "state correctional facility" is "any correctional center or correctional field unit used for the incarceration of adult offenders established and operated by the Department of Corrections, or operated under contract pursuant to § 53.1-262." Code § 53.1-1. A "local correctional facility" is "any jail, jail farm or other place used for the detention or incarceration of adult offenders, excluding a lock-up, which is owned, maintained, or operated by any political subdivision or combination of political subdivisions of the Commonwealth." *Id.*[7]

In support of his argument, Marlowe identifies *Lloyd v. Morgan*, No. 4:14cv107, 2015 U.S. Dist. LEXIS 35345, *1 (E.D. Va. Feb. 20, 2015). In *Lloyd*, a *juvenile* detainee "was in the custody of the Sheriff's Office en route from the Newport News Juvenile and Domestic Relations Court to the Newport News '*Juvenile Secure Detention*' facility[,]" when she fell down the courthouse stairs and was injured. *Id.* at *19 (emphasis added). The defendant argued that Lloyd's claims were barred under Code § 8.01-243.2. *Id.* at *15. The United States District

---

[6] Castle concedes that there were no administrative remedies to exhaust in this case under the unusual circumstances of Marlowe's injuries.

[7] While the definitions in Code § 53.1-1 apply "as used in this title," the Code of Virginia is one body of law. *Newton v. Commonwealth*, 21 Va. App. 86, 90 (1995) (quoting *Branch v. Commonwealth*, 14 Va. App. 836, 839 (1992)).

- 8 -

Court for the Eastern District of Virginia disagreed, reasoning that "Lloyd's allegations do not establish that she was confined in 'a state or local correctional facility.'" *Id.* at \*19. To the contrary, she was held in a juvenile center which is not within the scope of Code § 8.01-243.2.

The District Court conducted a thorough analysis of Virginia's definitions of a "state or local correctional facility":

> The Virginia Code defines a "state correctional facility" as "any correctional center or correctional field unit used for the incarceration of *adult offenders* established and operated by the Department of Corrections, or operated under contract pursuant to § 53.1-262." Va. Code Ann. § 53.1-1 (emphasis added). The Virginia Code similarly defines a "local correctional facility" as "any jail, jail farm or other place used for the detention or incarceration of *adult offenders*, excluding a lock-up, which is owned, maintained or operated by any political subdivision or combination of political subdivisions of the Commonwealth." *Id.* (emphasis added). Finally, the Virginia Code defines a "Secure facility" or "detention home" as "a local, regional or state public or private locked residential facility that has construction fixtures designed to prevent escape and to restrict the movement and activities of *children held in lawful custody*." Va. Code Ann. § 16.1-228 (emphasis added).

*Id.* at \*19-20. The court went on to explain that "[t]he specificity employed with the terms 'state or local correctional facility' indicates a clear expression that 'the items expressed are members of an associated group or series, justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence.'" *Id.* at \*21 (quoting *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003)). Thus, the statute of limitations in Code § 8.01-243.2 could not apply because Lloyd "was in the custody of a secure juvenile detention center" not a state or local correctional facility, as defined by the General Assembly. *Id.* at \*24.[8]

---

[8] The United States District Court for the Western District conducted a similar analysis in *Kovari v. Brevard Extraditions, LLC*, No. 5:18-cv-0070, 2019 U.S. Dist. LEXIS 210992, \*1, \*9 (W.D. Va. Dec. 6, 2019), and concluded that the one-year statute of limitations in Code § 8.01-243.2 did not apply to a prisoner bringing claims related to his transportation from Virginia to Texas by a contractor working for the Harris County, Texas Sheriff's Office. The

Marlowe makes a compelling argument that a van cannot pass as a "correctional facility," and he reasons that Code § 8.01-243.2 therefore cannot apply. Case law, however, does not support his position. Moreover, the ultimate question here is *not* whether a van is a correctional facility, but, rather, whether Marlowe's claim fits the criteria set out by the statute. "For the one-year statute of limitations to apply, [the inmate] must have: (1) been a 'person confined in a state or local correctional facility'; and (2) 'brought on his behalf [a] personal action relating to the conditions of his confinement.'" *Bing*, 283 Va. at 387.

a. *Marlowe's Status as a Pre-Trial Detainee*

First, Marlowe suggests that as a pre-trial detainee the rigors of Code § 8.01-243.2 do not apply to him. However, Virginia precedent rebuffs this logic. In *Bing*, the plaintiff, a pre-trial arrestee, filed a complaint alleging assault and battery against officers who conducted a full body-cavity search on her without a court order. *Id.* at 384. The defendants filed a plea of the statute of limitations asserting that Bing's claim was barred under Code § 8.01-243.2. *Id.* The Supreme Court agreed, concluding that the Security Center in which the search was conducted was a state or local correctional facility, noting "[t]he Security Center is clearly such a facility, and it was there that [Bing] was clearly confined." *Id.* at 387. The Court also noted that Bing's "status as a pre-trial detainee [was] immaterial to [that] determination." *Id.* The Court in *Bing* wholly rejected the premise that the pre-trial status of the detainee is material to the determination of whether a person is or is not confined. *Id.* Instead, what matters is whether the person is "confined in a state or local correctional facility." *Id.*

District Court agreed with the plaintiff-prisoner that Code § 8.01-243.2 was inapplicable "because, when he was in defendants' custody, he was not incarcerated in a local or state correctional facility" operated by the Commonwealth or one of its political subdivisions. *Id.* at *9. The court concluded the definitions in Code § 53.1-1 "limit the applicability of the one-year statute of limitations to confinement operated by Virginia." *Id.*

- 10 -

b. *Marlowe was "Confined" in a Local Correction Facility at the Time his Action Accrued*

Marlowe next asserts that under a strict reading of *Bing*, the detainee must be within the four walls of the correctional facility—or literally "in" the facility—for Code § 8.01-243.2 to apply. He focuses on this language:

> The word "confine" is defined as "the state of being imprisoned or restrained." *Black's Law Dictionary*, 318 (9th ed. 2009). The statute further provides that such confinement must be in a state or local correctional facility. Code § 8.01-243.2. The Security Center is clearly such a facility, and it was there that she was clearly confined.

283 Va. at 387. The statute, however, does not say the specific underlying incident must occur inside prison walls—it indicates that the detainee's confinement must be in a state or local correctional facility. Here, Marlowe was within the custody and control of the local correctional facility. Moreover, the van in which he was restrained was the property of the Southwest Virginia Regional Jail and the driver was its employee. The language Marlowe relies upon in *Bing* comes in the context of an incident—a strip search—which plainly occurred within the facility walls. We do not believe *Bing's* analysis should be read, however, to limit claims only to incidents occurring literally within the facility boundaries.

Virginia law has long held that an inmate of a prison serving a sentence can remain in a "state of confinement" even when temporarily outside prison boundaries. In *Ruffin v. Commonwealth*, 62 Va. (21 Gratt.) 790, 793-94 (1871), the Supreme Court upheld a conviction for an inmate who murdered a guard on a work detail outside the prison, stating:

> Though at the time of the commission of the murder of which he was convicted, he was not within the walls of the penitentiary, but in a distant part of the State, he was yet, in the eye of the law, still a convict in the penitentiary; not, indeed, actually and bodily within its walls, imprisoned and physically restrained by its bars and bolts; but as certainly under the restraints of the laws, and as actually bound by the regulations of that institution, as if he had

- 11 -

been locked within one of its cells. These laws and regulations attach to the person of the convict wherever he may be carried by authority of law . . . .

In the context of escapes from work details, this Court has explained, consistent with *Ruffin*, that a detainee's status as a prisoner is not dependent on the detainee's physical location. *See Mabe v. Commonwealth*, 14 Va. App. 439, 441 (1992) ("The term 'prisoner in a . . . correctional facility' refers to the status" of the prisoner, "not to the circumstances of the escape."); *Penn v. Commonwealth*, 32 Va. App. 422, 427 (2000) (explaining that *Mabe* held that "the term 'in' did not narrow the ambit of the statute to prisoners physically inside the correctional facilities").

We believe that the same principles apply here. If Marlowe had been working on a jail road crew on Main Street in blazing heat without water or breaks, or shoveling snow in Arctic conditions and denied adequate protection from the cold—these conditions would be terms of his confinement. If the alleged mistreatment occurred during a period in which he was in a state of confinement in a local correctional facility, the statute of limitations in Code § 8.01-243.2 would apply based on his status as one who is confined—regardless of whether the work detail occurred inside or outside the prison walls.

This outcome is not inconsistent with *Lloyd* or *Kovari*. Notably, in *Lloyd*, the case on which Marlowe principally relies, the holding that the one-year statute of limitations was inapplicable was tied to the fact that Lloyd was in the custody of a juvenile detention center which is outside the aegis of Code § 8.01-243.2—it was not tied to the fact that Lloyd was outside the four walls of a correctional facility when injured. Similarly, *Kovari* held that a transport operated by a Texas sheriff's office did not fall within Code § 8.01-243.2 because the vehicle was not under the Commonwealth's control as required by the statute—not because the incident occurred beyond prison walls.

- 12 -

In *Lucas v. Woody* an inmate, who had completed her sentence, argued that as soon as she was released from confinement, Code § 8.01-243.2 ceased to apply to her claims arising from events occurring during her confinement; in other words, she contended the one-year limitations period could not apply to one who is no longer confined. The Supreme Court rejected this logic and clarified that for Code § 8.01-243.2 to apply, a person must be "confined" when the wrong occurs, but need not continue to be in a state of confinement when the action is filed. In so ruling the Court observed:

> The purpose of a statute of limitations is to provide parties and potential parties certainty with regard to when a cause of action is extinguished; the interpretation of Code § 8.01-243.2 urged by Lucas would do the opposite.

287 Va. at 362. This logic applies here as well.

Under Marlowe's "geographical" theory, if a prison bus crashed at the correctional facility's front gate so that half the bus was outside the gate and half within the prison boundary—would half the prisoners enjoy a two-year statute of limitations while the other half were bound by the narrower one-year statute? If an inmate were pruning hedges with one foot within the prison boundary and one outside when mistreated by a guard, which foot would control? Rather than focusing on the location where the claim accrued, it is best to track the language of the statute. We find that Marlowe's claims relate to the conditions of his confinement regarding the manner in which he was restrained and transported to the Southwest Virginia Regional Jail. At the time these claims accrued he was under the care and custody of the Southwest Virginia Regional Jail—and he was in a state of confinement there. Therefore, his

claims fall within the parameters of Code § 8.01-243.2.  Accordingly, the statute's one-year

statute of limitations applies to his claims and they are untimely.[9]

While we disagree with the circuit court's logic below, we agree with its outcome under

the right for the wrong reason doctrine.  *Miller & Rhoads Bldg., L.L.C. v. City of Richmond*, 292

Va. 537, 547 (2016) (where the record supports the right reason, the appellate court may reject

the wrong reason, but leave the correct judgment undisturbed); *Haynes v. Haggerty*, 291 Va.

301, 305 (2016) (applying right for the wrong reason analysis).  Marlowe's claims were properly

dismissed.

CONCLUSION

We set aside the trial court's denial of the plea asserting that Marlowe's claims were

barred under the statute of limitations set forth in Code § 8.01-243.2.  Because we find that

Marlowe's claims are time-barred under the governing statute of limitations, Code § 8.01-243.2,

we affirm the judgment below dismissing his second amended complaint.

*Affirmed.*

---

[9] We note that the definition of a "local correctional facility" in Code § 53.1-1 includes a "jail, jail farm or other place used for the detention or incarceration of adult offenders . . . ."  We further note that the "or other place" wording does not appear in the definition of a "state correctional facility."  We do not rely on this language in reaching our conclusion.  This avoids the incongruous result that local jail vans may be intended, by statute, as places of confinement but state transport vans are not.

- 14 -